**Giovanni FERRARESE, Plaintiff,**

v.

**Vinda SHAW, Defendant.**

**15 CV 3738 (ARR) (CLP)**

United States District Court,
E.D. New York.

Signed January 19, 2016

Filed January 20, 2016

Rocco Lamura, Tosolini, Lamura, Rasile & Toniutti LLP, New York, NY, for Plaintiff.

Vinda Shaw, Brooklyn, NY, pro se.

### ORDER

POLLAK, United States Magistrate Judge:

On June 26, 2015, Giovanni Ferrarese ("petitioner") commenced an action against Vinda Shaw, a/k/a Maima Dassin, a/k/a Tata Shaw ("defendant"), seeking to secure the immediate return of plaintiff's child and to ensure petitioner's rights of custody pursuant to the Convention on the Civil Aspects of International Child Abduction and the International Child Abduction Remedies Act. (Pet.'s Mem.[1] at 1; Lamura Aff.[2] ¶ 3). On October 21, 2015, petitioner filed a motion with the Court asking for an extension of time to serve process on the defendant, as petitioner was unable to serve the defendant within 120 days of the action being filed. On October 30, 2015, the Court granted this request, finding that petitioner had demonstrated good cause in diligently searching for defendant's current residence, which had been complicated by defendant's alleged multiple name changes. (Order[3] at 2). Presently before the Court is petitioner's motion to serve the summons and petition on the defendant by alternative means under Fed.R.Civ.P. 4(e)(1), which was filed on November 23, 2015.

### BACKGROUND

After commencing this action against the defendant on June 26, 2015, petitioner secured the services of Nicoletti & Harris Inc. ("N & H"), a New York corporation, to serve the summons and petition upon the defendant at her residential address. (Lamura Aff. ¶¶ 4–5). When N & H attempted to serve the defendant at this residential address, N & H learned that the defendant no longer lived at the residence. (Id. ¶ 5; 9/24/15 Aff.[4] at 1). Petitioner then requested N & H to conduct a skip trace on the defendant to obtain her new residence. (Lamura Aff. ¶ 5). During this process, petitioner learned that the defendant had changed her name several times and N & H could not locate her address. (Id. ¶ 6). However, N & H contends that it was able to locate the defendant under the name "Maima Dassin," and attempted service at the address associated with this name. (Id.) While attempting service at the address associated with the name "Maima Dassin," N & H encountered defendant's sister, Cianna, who stated that she, and not the defendant, lived at this address. (Id. ¶ 7). Petitioner alleges that defendant's sister acted in a hostile manner towards the process server and refused to accept service. (Pet.'s Mem. at 5; 10/14/15 Aff.[5] at 1). During this encounter, defendant's sister indicated that the defendant had moved to Brooklyn and no longer used the names "Vinda Shaw" or

1. Citations to 'Pet.'s Mem.' refer to Petitioner Giovanni Ferrarese's Memorandum in Support of his Motion for Permission to Serve Defendant Through Alternative Means Pursuant to Federal Rule of Civil Procedure 4(e)(1), dated November 22, 2015.

2. Citations to "Lamura Aff." refer to Rocco Lamura's Attorney Affirmation in Support of Motion for Permission to Serve Defendant Through Alternative Means Pursuant to Federal Rule of Civil Procedure 4(e)(1), dated November 22, 2015.

3. Citation to "Order" refers to the Court's Order granting plaintiff's request for an extension of time, dated October 30, 2015.

4. Citation to "9/24/15 Aff." refers to the Affidavit of Attempted Service of Summons, Complaint and Exhibits, signed by Caswell Bryan, dated September 24, 2015.

5. Citation to "10/14/15 Aff." refers to the Affidavit of Attempted Service of Summons, Complaint and Exhibits, signed by Caswell Bryan, dated October 14, 2015.

"Maima Dassin," but refused to provide N & H with defendant's current residential address and alias. (Lamura Aff. ¶ 8).

Through independent searches, petitioner allegedly found the defendant under a new identity, "Tata Shaw." (*Id.* ¶ 9). Again, petitioner requested N & H to conduct a skip trace on defendant based on the name "Tata Shaw;" however, N & H was unable to find any information as to an address in Brooklyn, linked to any of the following names: "Tata Shaw," "Vinda Shaw," or "Maima Dassin." (*Id.*) On October 20, 2015, petitioner hired Crossroads Investigation ("Crossroads"), a full-service national private investigation agency, who advised petitioner that an extensive investigation for defendant's current residence would take "additional time," given the difficulties in assessing defendant's current information. (*Id.* ¶ 10). After two weeks, Crossroads indicated that an extensive investigation by searching the names "Vinda Shaw," "Maima Dassin" and "Tata Shaw" did not yield any results as to the defendant's whereabouts. (*Id.* ¶ 11).

Thereafter, petitioner's counsel conducted an independent investigation by searching for the defendant through various social media channels, and found a Facebook profile, Instagram profile and e-mail address allegedly associated with the defendant under the name "Tata Shaw." (*Id.* ¶¶ 11–12). The Facebook profile for "Tata Shaw" depicts a photograph of a woman, which petitioner confirmed to be the defendant. (*Id.* ¶¶ 14–15). It appears that the Facebook page has been updated frequently throughout the past year. (*Id.*) However, there does not appear to be an email address linked to the Tata Shaw Facebook page. As to the Instagram profile, petitioner's counsel located the username @nycdival, which was linked to the email address tatashaw@gmail.com; however, there is no mention as to how this user-

name is connected to the defendant. (*Id.* ¶ 16). Counsel also found an Instagram profile allegedly associated with petitioner's daughter, which was linked to the same email address, tatashaw@gmail.com. (*Id.* ¶ 17). Subsequently, on November 18, 2015, petitioner mailed a copy of the summons and the petition to defendant's sister's residence, which is also defendant's last known address. (*Id.* ¶ 18). The next day, on November 19, 2015, petitioner also mailed a copy of the summons and the petition to the Clerk of Court in the Eastern District of New York. (*Id.* ¶ 19).

Petitioner now seeks the Court's "intervention and authorization" in allowing petitioner to serve the defendant through alternative means under Rule 4 of the Federal Rules of Civil Procedure and New York CPLR ("CPLR") Section 308(5), in order to proceed "expeditiously with this case." (Pet.'s Mem. at 1). Specifically, petitioner asks the Court to enter an order permitting the petitioner to serve the defendant by: (1) emailing defendant at her known email address; and (2) providing a copy of the summons and petition to defendant's Facebook account. (*Id.*) In support of the motion, petitioner asserts that he has attempted to serve defendant several times by traditional means; however, these efforts have been unsuccessful and the defendant's whereabouts remain unknown. (*Id.*)

Petitioner also contends that requiring him to serve all future papers filed for the remainder of the case, pursuant to Federal Rules of Civil Procedure 5(b)(2)(C) and 5(b)(2)(D), would result in "undue delay." (*Id.* at 6). Further, petitioner asserts that given the defendant's sister's hostility towards one of the process servers, the defendant may not actually receive any papers under this method of service. (*Id.*) However, in a footnote, petitioner explains that he successfully reached the defendant,

and was contacted by her, after mailing a letter to the defendant's last known address on January 14, 2015. (*Id.* n.1). Specifically, petitioner states that on January 27, 2015, the defendant called petitioner and she said that "she received the January 14, 2015 letter" and that she was "going to win the case." (*Id.*) For the following reasons, the Court hereby authorizes petitioner to serve the summons and petition on the defendant in the manner prescribed below.

## DISCUSSION

■ A plaintiff seeking to effect alternative service must make a showing that the other prescribed methods of service were "impracticable." *S.E.C. v. Nnebe,* No. 01 CV 5247, 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003) (quoting *Markoff v. South Nassau Cmty. Hosp.,* 91 A.D.2d 1064, 1065, 458 N.Y.S.2d 672 (App.Div.2d Dep't 1983)) (internal quotations omitted). Once plaintiff has met this burden, the Court must ensure that the alternate method complies with "constitutional due process." *F.T.C. v. PCCare247 Inc.,* No. 12 CV 7189, 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950)). Thus, the Court first examines whether plaintiff has shown that traditional service is impracticable, and then determines whether the purported method of alternate service complies with due process.

### A. Impracticability

Rule 4(e) of the Federal Rules of Civil Procedure provides for service of process on an individual in the United States according to the laws of the state where the district court is located. In New York, service of process may be effected by: (1) personal service; (2) delivery to "a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and by either mailing the summons to the person to be served at his or her last known residence; (3) service on an agent; or (4) so-called "nail and mail" service. N.Y.C.P.L.R. §§ 308(1)–(4).

■ When traditional methods of service prove "impracticable," service may be made "in such manner as the court, upon motion without notice, directs." *Id.* at § 308(5). Specifically, "Section 308(5) requires a showing of impracticability of other means of service, but does not require proof of due diligence or of actual prior attempts to serve a party under the other provisions of the statute. The meaning of 'impracticability' depends upon the facts and circumstances of the particular case." *Fortunato v. Chase Bank USA, N.A.,* No. 11 CV 6608, 2012 WL 2086950, at *1 (S.D.N.Y. June 7, 2012) (quoting *S.E.C. v. HGI, Inc.,* No. 99 CV 3866, 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999)) (citations omitted).

Courts have found a showing of impracticability, and have authorized alternative service, where the defendant could not be located by means of a diligent search. *S.E.C. v. Nnebe,* 2003 WL 402377, at *3 (collecting cases and finding that the S.E.C. had made a showing of impracticability to effect alternate service on defendant); *S.E.C. v. HGI, Inc.,* No. 99 CV 3866, 1999 WL 1021087, at *1 (S.D.N.Y. Nov. 8, 1999) (finding proof of impracticability where, despite efforts to locate the defendant by inquiring with the United States Postal Service and by searching computer databases, defendant's whereabouts remained unknown).

■ In this case, petitioner has demonstrated that it would be impracticable to serve the defendant by traditional methods of service, as described in CPLR Section 308. Petitioner has been unable to locate

the defendant despite sending process servers to both of defendant's home addresses, speaking with defendant's sister at one of the home addresses about defendant's whereabouts, and hiring a private investigator in an effort to locate the defendant. (Lamura Aff. ¶¶ 4–6). Moreover, after searching various computer databases and social media platforms, petitioner contends that defendant has changed her name several times. (Pet.'s Mem. at 2). Accordingly, under the circumstances, the Court finds that traditional methods of service may be "impracticable" in this case because the defendant is taking active measures to avoid being located and to evade service.[6]

## B. *Alternate Service Methods*

 In shaping an appropriate method for alternate service, the Court must ensure that the alternate method complies with "constitutional due process" by being "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *F.T.C. v. PCCare247 Inc.*, 2013 WL 841037, at *4 (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. at 314, 70 S.Ct. 652); *S.E.C. v. Nnebe*, 2003 WL 402377, at *4 (same); *Fortunato v. Chase Bank USA, N.A.*, 2012 WL 2086950, at *2 (S.D.N.Y. June 7, 2012). Courts have found that service by certified mail to a defendant's last known address is a valid method of alternate service. *D.R.I., Inc. v. Dennis*, No. 03 CV 10026, 2004 WL 1237511, at *2 (S.D.N.Y. June 3,

2004) (collecting cases). Courts have also allowed for service to be effected by delivering the summons and complaint to a relative of the defendant. *See S.E.C. v. Nnebe*, 2003 WL 402377, at *4 (finding that serving the summons and amended complaint to relatives of the defendant was appropriate); *Leab v. Streit*, 584 F.Supp. 748, 763 (S.D.N.Y.1984) (permitting service by delivery of the summons and complaint to the defendants' parents and grandmother); *Deason v. Deason*, 73 Misc.2d 964, 966, 343 N.Y.S.2d 276 (Sup.Ct. Albany Cty. 1973) (finding that "service of the summons by mailing to the addresses of a defendant's relatives satisfies the demands of procedural due process ... where a plaintiff has demonstrated that he or she has exhausted all reasonable possibilities of serving the summons personally").

Under CPLR Section 308(2), service may be completed by mailing the summons and petition to defendant's "last known residence," and delivering a copy of the summons and petition "to a person of suitable age and discretion" at defendant's actual dwelling place or usual place of abode. CPLR § 308(2). In this case, however, defendant's sister refused to accept service. Thus, it is unclear that the summons and petition were properly "deliver[ed]" within the meaning of CPLR Section 308(2), and thus, service has not been completed under the traditional methods described in Rule 4 of the Federal Rules of Civil Procedure or CPLR Section 308.

---

6. Petitioner argues that by mailing the summons and petition through the United States Postal Service to defendant's last known address on November 18, 2015, and to the Clerk of Court in the Eastern District of New York on November 19, 2015, service was properly effected pursuant to Rule 5 of the Federal Rules of Civil Procedure. (*Id.* at 5). Rule 5 governs the service of papers such as orders,

discovery papers, written motions and notices, and 'pleading[ s] filed after the original complaint.' Fed. R. Civ. P. 5(a)(1)(B) (emphasis added). Accordingly, service under Rule 5 is not effective for serving the initial summons and petition. However, service of the pleadings may be accomplished by mail in accordance with the dictates of CPLR Section 308(2).

Petitioner argues that his proposed method of serving the defendant by email and posting on her alleged Facebook page will "most likely" provide the defendant with notice of future filings. (Pet.'s Mem. at 6). "Service by email alone comports with due process where a plaintiff can demonstrate that the email is likely to reach the defendant." *F.T.C. v. PCCare247 Inc.*, 2013 WL 841037, at *4 (collecting cases and finding that service by email alone was sufficient because the defendants had used their email addresses during the course of business and the Court had independently confirmed that one of the email addresses was recently used by one of defendants); *D.R.I., Inc. v. Dennis*, No. 03 CV 10026, 2004 WL 1237511, at *2 (S.D.N.Y. June 3, 2004) (allowing plaintiff to serve the summons and complaint on defendant by emailing a copy to an email address that plaintiff believes was used by defendant, by sending a copy by certified mail, return receipt requested to defendant's last known address, and by publishing the action in a local newspaper).

Service by Facebook, however, has only been allowed in cases where "the proposed service by Facebook is intended not as the sole method of service, but instead to backstop the service upon each defendant at ... its[ ] known email address." *F.T.C. v. PCCare247 Inc.*, 2013 WL 841037, at *5; *but see Fortunato v. Chase Bank USA*, 2012 WL 2086950, at *2 (denying plaintiff's motion to serve by Facebook because plaintiff had not set forth "any facts that would give the Court a degree of certainty that the Facebook profile ... is in fact maintained by [defendant] or that the email address listed on the Facebook profile is operational and accessed by [defendant]"). Courts have acknowledged that service by Facebook is a relatively "novel concept," and "that it is conceivable that defendants will not in fact receive notice

by this means;" however, courts must remain open to "considering requests to authorize service via technological means of then-recent vintage." *F.T.C. v. PCCare247 Inc.*, 2013 WL 841037, at *5 (citing cases and holding that service by *both* email and Facebook satisfies the due process inquiry (emphasis in original)).

Having considered the petitioner's submissions and the facts and circumstances of this case, especially the defendant's persistent effort to evade service, the Court finds that service by alternate methods is proper in this case. However, petitioner's proposed method of service by email and Facebook alone are not reasonably calculated to provide notice of the action to defendant. Specifically, petitioner has provided little evidence that the defendant uses the email address tatashaw@gmail.com or that the Facebook page bearing the name "Tata Shaw" is actually maintained by the defendant. Although petitioner has stated that he has "independently verified" that the email address belongs to the defendant, plaintiff's basis for this assertion is unclear. Petitioner claims that he has "independently verified" that the email address belongs to the defendant because this email address is linked to the Instagram accounts of defendant and petitioner's daughter. However, it is unclear how petitioner has determined that these Instagram accounts are actually maintained by the defendant.

With that said, courts have allowed service by email and Facebook as additional methods of alternate service, which the Court finds is appropriate in this case. *See D.R.I., Inc. v. Dennis*, 2004 WL 1237511, at *2 (allowing plaintiff to serve by three different methods of alternate service, including by email to an email address plaintiff thinks belongs to the defendant). Therefore, the Court will allow service by email and Facebook, but the

petitioner must also effect service by certified mail, return receipt requested, on defendant's last known address and on defendant's sister, who resides at this location. *See id.* (holding that service by certified mail to a defendant's last known address is a valid method of alternate service); *S.E.C. v. Nnebe,* 2003 WL 402377, at *4 (holding that service on defendant's relative would likely give defendant notice of the case brought against him). As discussed above, it is clear that petitioner has had success in reaching the defendant by mailing papers to the defendant's last known address. In fact, the defendant called petitioner and stated that she had received petitioner's letter and that she would win the case. (Pet.'s Mem. at 5 n.1). Therefore, it is reasonable to conclude that serving papers on defendant and on defendant's sister at this location will likely reach the defendant and give the defendant notice of the action.

### CONCLUSION

In light of the foregoing, the Court grants plaintiff's motion for permission for alternate service under Rule 4 of the Federal Rules of Civil Procedure and CPLR Section 308(5). Plaintiff is Ordered to attempt service of process of the summons and petition by all of the following methods: (1) by sending copies of the summons and petition by certified mail, return receipt requested to defendant's last known address and to defendant's sister at this address; (2) by emailing a copy of the summons and petition to the email address tatashaw@gmail.com; and (3) by sending a Facebook message to Tata Shaw, which is linked to the Tata Shaw Facebook page, that contains a copy of the summons and petition. Going forward, plaintiff is permitted to serve all papers, filed for the remainder of the case, by using the above-mentioned methods.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**